Thank you, Your Honor. Jason Torchinsky for WinRED. With me at counsel table is Ed Wenger. The Federal Election Campaign Act established a single uniform national standard for federal campaign finance. Attorney General Ellison seeks to upend that. What WinRED seeks here is a narrow injunction. This investigation started from the beginning with the Attorney General asserting, quote, reasonable grounds to believe that WinRED's pre-check boxes violates Minnesota's consumer protection laws absent additional disclaimer and disclosures beyond what speaker requires. But you should focus on the CID, right? Not on that letter, that PR letter by the Attorney General's? Well, I think you should focus on both and read them together, Your Honor, because the author — Wait, wait. The only legal thing is the CID. Please focus on the CID. Sure. The CID has to be based on Minnesota Statute 8.31, Subdivision 2, which requires reasonable grounds to believe. So if Iowa, Alaska, Minnesota, Georgia, and New York each had their own disclaimer requirements for federal campaign fundraising, FECA would be entirely upended. If Attorney General Ellison were to run for President and his campaign website, under his view of the law, could require 50 different disclosures and disclaimers depending on how he decided to fundraise, that would upend Congress's intent in passing and adopting the Supremacy Clause. Yeah, but he's not doing that. Right now he's Attorney General, and as Attorney General, surely if you point a gun at somebody and make them give you a contribution, he can do something about that, or somebody in Minnesota can. Right? I don't think that would fall under disclosures and disclaimers. I mean, that's the thing. Well, he'll disclose the disclaimers on the gunman's chest. You get my point. But I don't, Your Honor, because — No, wait, wait, wait. There's some area of fraud and common law that applies to campaign fundraising. Yes, and the federal government polices that with respect to federal PACs. In fact, DOJ has prosecuted a number of what we call, what we refer to as, scam PACs, you know, under false statements laws like 18 U.S.C. 1001 and wire fraud statutes. So, but the federal government does that. It's not the States that's doing that. And I think that's the difference, because this, the, you know, the House report accompanying the FICA amendments in 1974 said that Congress intended a single, uniform, and I think the Court has — Okay. Let's talk about something that counts, which is their regulation. Isn't the only real touchstone we've got here the regulation of the FEC? You know what I'm referring to? 11 CFR 108.7? Yes, and I think, Your Honor, I think I should point you back to advisory opinion 1989-26. Oh, wait, wait, wait. Let's do the regulation first. It has the force that affect the law. You don't think the advisory opinion has force affect the law, do you? It tells you what, it tells you the FEC's view of the application of the regulations in the statute. Yeah, but let's do the regulation first. Okay. Where in the regulation are you? Where in the regulation is the other side? Because it's related to Federal campaign finance fundraising, and that's why the FEC regulates uniform national disclosures and disclaimers. I don't see that in 108.7. Do you know what I'm referring to? I mean, 11 CFR 108.7. I don't have the text of it in front of me, Your Honor. I apologize. It doesn't have the word uniform, for example, but I agree with you kind of on the uniform. So don't go there. What about the similar offenses? It says prohibition of false registration voter fraud, theft of ballots, and similar offenses. Right. And I think what they're talking about there, Your Honor, for example, Federal candidates have been prosecuted by State governments for, let's say, submitting false signatures on ballot access applications. What we haven't seen, with the exception of the Bass case out of New Hampshire, is any State court opinion in the last 50 years where a State government has attempted to take an enforcement action against a Federal PAC. There's not a single reported State court case with the exception of the New Hampshire decision about preemption and the additional disclaimers that New Hampshire tried to apply. Well, a PAC can't use revenge porn. Let's do a gross example. A PAC can't use revenge porn to extort a contribution, right? I think that's right, Your Honor, but that's not about disclosures and disclaimers. Okay. Right? I mean, that's not – Well, to what extent is the CID about fraud and not about disclosures and information? Because the FEC, if you look at 1989-20 – Counsel, I'm trying to talk about specifics to learn your case. Yes. And these are truly honest questions. Yes. Honest is a Missouri phrase. Sorry. But these are truly honest questions. And when I look at the CID, I see a lot about fraud using a pre-checked box. And, you know, if the box said 5 in great big 36-point type, and then it had the 100 in 1-point type, do you think that the Attorney General can prosecute that as fraud? No. Because the FEC – Oh, surely they can. Your Honor, the FEC, in the disclaimer in the regulations at 110.11 about how exactly disclaimer – the disclaimers are supposed to be, they – The FEC does not specify this is the box you check. Beside the box, it says a 5 in 36-point type. And the little word 100 is in little bitty print. Isn't that like pointing a gun at somebody or using revenge porn? Your Honor, no, I don't think so. Because the FEC in 110.11 even specifies the font size you have to use when you're printing FEC-required disclaimers. This is not a disclaimer. This is by the checked box. But the amount – The amount is not a disclaimer. What do you think the disclaimer is? That's what we're coming down to. Well, I think, Your Honor, I think this is why I point you to 1989 – Counsel, what do you think the disclaimer is? I think the disclaimer is paid for by and the stuff they regulate to the nth degree. And I'm the candidate who authorized this and all that stuff. But, Your Honor, I point you to 1989-26, the advisory opinion about recurring transactions where the FEC laid out what was supposed to happen. And the FEC told political committees they have to tell donors up front if they're going to authorize – if they're authorizing recurring transactions. They have to, on a regular basis, before each withdrawal, offer the – the donor an opportunity to decline additional withdrawals. They also specified that those recurring donations have to end when the candidate loses a primary or a general. So I think, Your Honor, the FEC has expressed intent as far back as 1989 to occupy the field here. And when the Attorney General comes in and says, nope, we're going to supersede that, that runs directly into the Supremacy Clause and the – and the – and the preemption language the Congress included in FECA in 1974. Counsel, what were you just quoting from in that direction? Advisory opinion 1989-26, on page 4, the FEC says – and this I actually have in front of me – in keeping with the underlying concept of your proposal, a contribution made each month in the actual amount of the monthly withdrawal, the ability of the contributor to revoke his or her deduction authorization must be made clear. Such ability is explicitly referred to in the sample deduction, blah, blah, blah. In addition to stating that the request will remain in effect until the Commission has received written notification of the revocation in a manner affording a reasonable opportunity to act on it, the Commission – the Committee should also state on the deduction authorization form what it considers to be a reasonable time to act on a revocation request, perhaps with specific reference to terms of agreement. So I think, Your Honor, the point of 1989 – Where is – where is the language in there talking about recurring donations? The entire advisory opinion is about the authorization of recurring donations to a political committee. You know, Edwin FIKA was an interesting statute, Your Honor. It was, you know, passed in 1972 and amended in 1974, and through a series of advisory opinions, the FEC has basically updated guidance to committees about how they're to fund those with changing technology, right? I mean, facsimile appears over and over again in the regulations, but nobody does anything by fax machine anymore. So the FEC has, you know, dealt with things like recurring transactions through advisory opinions, things like credit card transactions through advisory opinions. Tell me – tell me what you think the legal status is of the advisory opinions. The advisory opinions are the FEC's, you know, expression of its view of the law and also essentially control. If you comply with the FEC's guidance in an advisory opinion, then you are basically protected from enforcement action by the FEC. And again, with respect to that, enforcement action by the FEC covers the field on civil enforcement actions. And that's why we think that the Attorney General here is overstepping the preemption clause, because the FEC has indicated with respect to the disclosures and disclaimers required for Federal fundraising, the FEC has been abundantly clear. You've got 1989-26 on recurring transactions. You've got a series of advisory opinions in the 1990s about how to take credit card transactions. You've got a series of advisory opinions in the mid 90s to early 2000s describing how to take contributions over the Internet. You've got, starting in the mid-2000s, some advisory opinions on how to take contributions over text messaging. You know, even today, you know, there's all kinds of – I mean, just in the last three years, there have been a series of different websites that have asked about how to do online fundraising. And the FEC, through the advisory opinion process, provides guidance to the regulated community. And what the Attorney General is – they cited the page – you didn't cite what page your 1989 advisory opinion is on in your brief, so I couldn't find it quickly. But there's I could. And here's what they say. They say that it says electronic deposits must be otherwise lawful, and any dispute about it is subject to State law. What about that language in your 1989 advisory opinion? I'm assuming they're quoting it correctly, of course. If you look at the – if you look at footnote 3 in 1989-26, it says disputes with the reference to the effective date of the motus of revocation is subject to State law. It doesn't talk about disclosures and disclaimers on the front end. The disclosures and disclaimers on the front end are addressed directly by the FEC in that paragraph. Deposits. They say deposits is the subject of a sentence. Deposits otherwise lawful, any dispute about a payment, subject to State law, and generally outside the purview of the Act. You don't even know what they're quoting? I'm sorry. No, I do. It's in footnote 3. Okay. What footnote 3 is about? You can tell me. I think that's – that relates to the effective date of a motus of revocation. That doesn't have anything to do with the disclosures and disclaimers on the front end, which is what this case is talking about here. And that's why we think they've gone beyond the authority and are treading into the preemption clause of the Federal Election Campaign Act. Counsel, but do you think it's possible that at the conclusion of the Attorney General's investigation that he might actually agree with you? Your Honor, I don't think he has the legal authority to get there. But do you think it's possible that at the conclusion of the investigation, after gathering information, that the Attorney General might agree with your position, that there is preemption? I think that's possible. So what's wrong with the Attorney General, presumably proceeding in good faith here, trying to gather information in order to make such a determination? Your Honor, because I think it's a clear legal question. Either the State requires additional disclosures and disclaimers or it doesn't, right? If it doesn't or if it does, they should just say that. Why we need to, you know, issue a multi-page CID that includes things about communications between Federal political committees about their campaign fundraising and about conversion rates of donations that aren't recurring. I mean, the scope of that CID is an incredible intrusion into the organization and operation of a Federal political committee. But you asked the district court to narrow it. We asked the district court for an injunction barring the investigation because You didn't ask just the narrowing of it, the tailoring of it, right? You asked no tailoring. You're going zero sum, right? With respect to investigations of disclosures and disclaimers, yes, Your Honor, that's what we think we're entitled to. And I am into my rebuttal time, so I'd like to reserve my remaining two minutes until 245. Mr. Kramer. Thank you. Thank you, Chief Judge. May it please the Court. My name is Liz Kramer. I'm Minnesota Solicitor General. I'm here this morning representing General Ellison. There are two fundamental problems with appellant's arguments. The first is appellant's claims are moot. Sorry, not moot. Not right for a decision by this Court at this time. The second is that our investigation is about deception, not disclaimers. And appellant's counsel cannot change that by simply repeating the words disclaimers and disclosures over and over and hoping that will lead... Well, do you believe you can control, you, the Attorney General, can control disclosures about federal contributions? Judge Benton, we are not trying to control disclosures about... That's what you said in your initial letter signed by the four Attorney Generals in plain English. They don't provide clear and conspicuous disclosures. Those are your words. You surely can't do that. Judge Benton, I invite you to look at that letter. It's at Joint Appendix, page 17. What it says is actually not directed to this particular target, Wynnred. It says that there are laws in the general that require affirmative consent before you can have recurring contributions. But your questions to opposing counsel were appropriate in directing us to the CID. The CID at Joint Appendix 64... Well, it says the word disclosures, too, counsel. You're aware of that. Two or three times, especially toward the end. Go ahead. But the thrust of it in the beginning where it talks about what is a reasonable basis for an investigation is are consumers being deceived? Is there fundamentally a Consumer Fraud Act claim here? And one example of that is including pre-checked boxes. It does not predetermine what the remedy would be. The letter, the request for information that's at issue here, why is all the additional information being requested about donors and lists of others instead of focusing on the checkbox? Are you using the checkbox? Is the checkbox something that requires or continues donations in perpetuity? Why isn't the information focused on what you describe as the core of your interests to make sure there's not fraud with the use of a checkbox? As opposed to what seems like quite a bit of disclosure about how they are gathering funds. First response, Your Honor, is back to our ripeness issue. If Wynnred wants to limit the scope of the Attorney General's investigation, it has the opportunity to do that. That is something our targets frequently do in district court is ask the court to make limiting guidance. And you oppose it. Are you going to impose one because you ask for all web pages that they've used to solicit any contribution? That's what you say. I just read it. Page 9. Tell us today. Are you really after that? Your Honor, we have to respond to the families. That's another yes or no question. Are you really after all web pages that Wynnred has hosted or used to solicit donations? We are after everything in our CID, definitely. And I want to be clear. Counselor, that's surely too broad. Boy, that violates the basic 108.7. Disclosure and receipts of expenditures by federal candidates and political committees. The FEC says with the power of law, federal law supersedes state law. That's an easy one, right? Your Honor, the issue of pre-check boxes is nowhere in 108.7. Counsel, disclosure of receipts and expenditures by federal candidates and political committees, federal law supersedes state law. I'm quoting. And then you ask for every web page that they have hosted or used to solicit donations. Those have to be contrary to each other, right? I disagree, Your Honor. I'll rest on the plain language of 110.7. Go ahead. Sure. Nothing about the identification of their websites constitutes a disclosure. You didn't say identification. You said all web pages they've ever used. Right. Isn't that an identification of websites, Your Honor? So I want to get back to our fundamental point first about ripeness. Any opinion from this Court about preemption at this point would be hypothetical and advisory. That's because there's many steps of this investigation, as you all know, that could go forward. And at each of those steps, it could move the preemption issue that appellant has placed before this Court. For example, the Attorney General could receive the information from the CID and decide there's not enough to go forward with an enforcement action. The Attorney General could go forward with an enforcement action and the parties could resolve it. That happens often in our investigations. Or similarly, the Wynnred could ask the District Court to limit the investigation or to limit the types of remedies that could be sought and appropriately awarded by the Court. In the meantime, you get a fish. Now, suppose we don't believe in fishing expeditions. Okay? Take that as a rule. Okay? What do you really want to get? We really want to understand whether and how consumers in Minnesota were deceived by this website. There's numerous public reports. I can't talk about the complaints our office has received, but I can talk about public reports. You have the New York Times noting two ways that pre-checked boxes deceived consumers, especially seniors. One, they said that they would agree to recurring contributions. They made that a very small type in a way that people didn't expect. Or they did the so-called money bomb where it said, I agree to give again on X date. That wasn't set up on the website in a way that people would expect it. So what we're really trying to get at is what did Wynnred know about that? How did it intend to do that? And were people actually confused in a way that violates Minnesota law, either Consumer Fraud Act or the Deceptive Trade Practices Act? And if so, what is the best way to avoid that in the future? What about number nine? You want all documents they've ever done about the content and layout of solicitations. Goodness gracious. I'm surprised they don't have a First Amendment claim on that. That's NAACP versus Alabama. Your Honor, you're right. They have not raised any First Amendment concerns about that. Does the Attorney General of Minnesota believe in the First Amendment or not? Obviously, the First Amendment applies here. And if Wynnred wants to raise those kind of complaints, they can do that, again, in an enforcement action that would proceed after an investigation. Wynnred has pointed this Court to no case that stops an Attorney General's fraud investigation at the inception before it's even able to collect some documents and ascertain whether there's been any investigation. And that's because that's inappropriate. Federal courts typically defer to state court actors in areas like this. Federal courts don't go looking for conflicts between federal law and state law. We get that from the Arizona v. United States case. And federal courts generally assume, as Judge Shepard indicated in my opponent's time, that state court actors act in good faith and that they're not going to veer into unconstitutional territory. What's the connection between Wynnred and the additional entity, WTS, that was actually the entity operating and building the website? Why are they not a part of this? Chief Judge Smith, again, I think that goes to the rightness. We haven't done the investigation. I can't tell you, other than the information they put in the record, what the real relationship is. I can tell you when you go to Wynnred.com, it only talks about Wynnred.com. It doesn't talk about Wynnred Technical Services at all, even in that fine print at the bottom. But that's why the investigation has to go forward to figure out, is this even the right entity? Who is potentially deceiving consumers here? Getting back to the preemption issue, moving away from rightness, I want to note that one of the reasons that there is no case doing what appellant asked this court to do is because federal courts operate under a certain set of principles in FEC preemption actions. The first is you have a presumption against preemption. This court found that in the Weber v. Haney case. This court also said that it construes narrowly that broad language in Section 301.4.3 that appellant is really hanging their hat on. In addition, when you look at the field preemption cases, there is a principle flowing from those earlier principles of defining the field narrowly, not broadly. And you see that, for example, in the Janvey case out of the Fifth Circuit, where the court defined the field it was looking at in terms of FEC preemption as, did FECA speak about whether a campaign committee might ever have to return stolen funds? That was about as narrowly as that court could define the issue at hand. Similarly, in the Galliano case in the D.C. Circuit, then-Judge Ginsburg defined the issue as just about the identification of the campaign committee at issue and whether they were authorized by the actual candidate. Even outside the FEC context, you see that in the Freightliner case from Justice Thomas, where he's looking at antilock brakes and semi-trucks, and he defines that as the issue. Had the federal agency spoken about antilock brakes? And because it hadn't, there was room for state regulation. Similarly here, there's nothing in the Federal Election Campaign Act or the rules issued by the FEC on the issue of pre-checked boxes. Or even on the issue more generally of whether donors have to give affirmative consent to having money taken out. I note that there was a colloquy with opposing counsel about FEC advisory opinion 1989-26.  that requested it, but in addition, it specifically notes that if you're going to have recurring bank debits, which was the only issue before the FEC at that point, there has to be a form that the consumer affirmatively agrees to. And interestingly there, there are boxes to be checked by the consumer, but the consumer affirmatively says, yes, I want a recurring contribution. Do you want to talk about footnote 4? He says that's where your quotations are from in your footnote response on the 1989 advisory opinion. Do you want to refer to that? Because all I know is what you've said. Go ahead. As I read it before, I mean. Go ahead. Pardon me. It's in footnote 3, Your Honor. Footnote 3, I'm sorry. I even wrote it down. Go ahead. No, that's okay. And it's on footnote 3, which is on page 5. What's the subject of otherwise lawful? Electronic deposits must be otherwise lawful. The subject of the sins. Sure. If you don't mind, I'm just going to start at the beginning. Sure. But go slow if you read a lot. Sure. The Commission notes that any dispute with reference to the effective date of a contributor's notice of revocation to the Committee or the Committee's forwarding such notice to the bank, Union Colony, is subject to State law and generally outside the purview of the Act. Our point in referencing that. Was the word otherwise lawful in there? I don't see otherwise lawful. Okay. Well, it's in your brief. But go ahead. Proceed. Otherwise lawful might be the language that the footnote is on. But I'm not going to try and find that quickly. No, no. We have clerks. Go ahead. The point there, Judge Benton, is just that even the advisory opinions upon which Appellant's Counsel relies heavily note that State law is still going to be in effect and governing this area. This is not an area like immigration law where you assume the Federal Government has taken it all in, right? That there's no room really for State regulation or only room at the edges. This is one where the Act itself contemplates joint regulation by Federal entities and State entities and we have to figure out what that overlap is. And because this is an area of joint regulation, that's why you have these principles of a presumption against preemption, assuming good faith on behalf of State actors, and allowing investigations to proceed before jumping in. If there are no further questions, I'll just note that because FECA does not immunize political fundraising from fraud investigations, we ask this Court to either dismiss the appeal as not right or affirm it on the merits. Thank you. Counsel, one last question in your last few seconds. Are you aware of any other cases around the country being litigated at this moment with this issue involving the check boxes on political donations that could be recurring? I am not, Your Honor. We did a check for that before this morning's argument. How about the other three Attorney Generals? Are they taking actions? I know they were dismissed in this case, but do you know if they're taking similar actions? I believe they're not. Everyone has decided to wait for this Court's opinion. Good. Thank you. Mr. Torchinsky, your rebuttal. Thank you, Your Honor. In at least two cases, courts have stepped in and stopped State investigations of Federal political committees, the first being the Bunning case out of the Sixth Circuit, which was an attempt by the Kentucky Registry of Election Finance to investigate spending by Congressman Bunning's Congressional Campaign Committee, and the New Hampshire Supreme Court stopped the Attorney General's investigation of the Bass Committee with respect to disclaimers in telephone calls. I want to just get back to a question that Judge Smith asked about the different win-win entities, and I think I would like to clear that up and point out where the District Court made a clear factual error. WinRed, Inc., which is the client that I am representing here, is a Federal political committee. It has a vendor named WinRed Technical Services. WinRed Technical Services operates the pages that appear at winred.com, but not every page at winred.com is associated with WinRed the PAC. And the key factual... So the Attorney General does need all these pages? Well, Your Honor, if I may just finish up exactly... Yeah, do. That worried me. There are state and local candidates who use the services of WinRed Technical Services to create their campaign fundraising pages. For example, Congressman Zeldin is a congressman from New York who's running for governor. His gubernatorial campaign fundraising, not regulated by FECA, is actually done through a page at winred.com. And if you go to the bottom of, you know, Congressman Zeldin's gubernatorial campaign page, there's nothing about WinRed the PAC. It does say powered by WinRed and has a little logo, but that's WinRed Technical Services. And it has all of the New York required disclaimers. There's none of the paid-for by, none of the FECA requirements about best efforts. None of that appears there. And if you go to a Federal campaign fundraising page that is actually, you know, on WinRed the PAC's sort of orbit, those have all of the required FECA disclosures, disclaimers, paid-for bys, you know, things about not, no Federal government contractors, et cetera. And I think the district court got it wrong because I think the district court made an assumption from its cursory review of pages that it appears to have located on winred.com website that WinRed, Inc., which is the Federal political committee that I'm here representing, does something with state and local fundraising. It does not. Every dime that flows through WinRed the PAC, which is the entity that I'm representing here, is 100% regulated by FECA. Every dollar that comes in, every dollar that flows through it is disclosed on the FEC's website. I also want to point out that each of the pages are actually customized by the various political committees and candidates that use WinRed the PAC's essentially conduit functions to raise money. So those candidates and those political committees actually decide whether they use recurring checkboxes or whether they don't. Congressman McCarthy does not use the pre-checked recurring checkboxes, but Congresswoman Elise Stefanik does. That was the choice of each of those Federal candidates. And that's why, Your Honor, we think for factual and legal reasons this Court should reverse the district court and reverse the district court's dismissal and remand for entry of an injunction in accordance with this Court's opinion. Thank you, Mr. Court. Thank you, Your Honor.